IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATHANIEL JOSHUA DENNETT,

    Defendant.

Case No. 19-00003-04-CR-W-BP

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Bruce Rhoades, Assistant United States Attorney, and the defendant, NATHANIEL JOSHUA DENNETT ("the defendant"), represented by F.A. "Al" White, Jr.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to **Count One** of the indictment charging the defendant with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, that is, conspiracy to distribute 500 grams or more of methamphetamine;

The defendant agrees to and hereby does plead guilty to **Count Two** of the indictment charging the defendant with a violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii) and (h) that is, conspiracy to commit money laundering; and

The defendant **admits the allegations of forfeiture**, which *also* include a **money judgment** to be entered against the defendant, as contained in the indictment.

By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

The dates of this conspiracy run between January 01, 2011, and February, 2019. This investigation was initiated from information received from cooperating defendants, as well as additional law enforcement information, regarding Gregory Evanoff and his methamphetamine distribution activities. Evanoff was a large-scale methamphetamine distributor who shared a source of supply with his brother-in-law Christopher Loree, Sr., who was indicted for methamphetamine conspiracy in Kansas. After Loree, Sr., was arrested, Evanoff took over supplying multiple ounce quantities of methamphetamine to **Defendant Nathanial Joshua Dennett**, Christopher Loree, Jr., Krystal Mann, Danny Campbell, Jr., Shawn Evans, James Jorden, Brooke Oliver and Justin Saighman. Evanoff also supplied numerous other federally indicted defendants with multiple ounce quantities of methamphetamine, including Brandy Morgan, Sabrina Morgan and Tommy Cambiano. Though a financial investigation it was determined that Greg Evanoff and his wife, Rita Evanoff, used the proceeds of the drug trafficking activity to purchase vehicles and also purchase and remodel their home in Kansas City, Missouri. Information obtained in the investigation also indicated that Greg Evanoff was one of many people responsible for supplying methamphetamine to the Galloping Goose Motorcycle Club.

On 01/25/2011, Kansas City, Missouri, Police Officers served a search warrant at the residence of Greg and Rita Evanoff in Kansas City Missouri. They seized methamphetamine and took Greg Evanoff, Rita Evanoff and Shawn Evans into custody. On the same date, they served a search warrant at the residence of **Defendant Nathaniel Joshua Dennett, a/k/a "Nate,"** where they recovered a handgun and a stolen Harley Davidson motorcycle. Because of those crimes,

2

**Dennett** was convicted of felon in possession of a firearm and sentenced to federal prison. Greg Evanoff was convicted of possession of methamphetamine and sentenced to the Missouri Department of Corrections.

On January 24, 2017, KM stated she was in a relationship with Danny Campbell, Jr., from November 2015 through February 2016. KM stated they purchased methamphetamine from TM and **Defendant Nathaniel Joshua Dennett**. KM said Campbell, Jr., was paying $6,000 for one pound of meth. KM said Campbell, Jr., was delivering methamphetamine to Kirksville, Missouri, to TT. KM stated TT later began transporting methamphetamine for Campbell, Jr., while he was in Kansas City for approximately two weeks. Campbell, Jr., was purchasing ½ pound to one pound of methamphetamine at a time in Kansas City and was purchasing meth every other day.

On 02/22/2017, KM stated that Christopher Loree a/k/a "Big Chris" distributes ounces of methamphetamine in Clay County, Missouri. KM stated Loree's son Christopher Loree, Jr., a/k/a "Little Chris" and **Defendant Nathaniel Joshua Dennett a/k/a "Nate"** work for "Big Chris" storing and distribution methamphetamine.

On 11/21/2017, TT said she obtained methamphetamine from Tommy Cambiano and **Nathaniel Dennett**. She said she met Cambiano through Danny Campbell, Jr. TT stated **Nathaniel Dennett** was Cambiano's supplier. TT stated she got five (5) to six (6) ounces of methamphetamine from Cambiano at a time approximately every three (3) days. She stated she obtained the methamphetamine from Cambiano at that frequency for over six (6) months from the summer of 2016 until April of 2017. TT stated when dealing with Cambiano, she observed Cambiano in possession of "pounds" of methamphetamine every time she was at Cambiano's residence. TT stated **Dennett** lived with "Little Chris." TT stated she had been inside **"Nates"** house four (4) or five (5) times with Danny Campbell, Jr. She stated she and Campbell picked up six (6) to seven (7) ounces of methamphetamine from **"Nate"** every other day during the eight (8) months they were together. TT indicated the most Campbell ever purchased from **"Nate"** at one time was approximately three (3) pounds. TT stated she stayed in the vehicle during that transaction, which took place at **"Nate's"** house in May or June of 2016. She said no other transactions were over a pound.

On 12/20/2017, Cooperating Defendant 1 (CD1) stated she met Greg Evanoff in the spring of 2016. Evanoff came to her house and talked to her about selling methamphetamine for him. Evanoff left from that meeting and returned a short time later and gave her a pound of methamphetamine "on front" to sell and pay him for when she resupplied. CD1 stated she sold the whole pound for $450 per ounce in two hours and called Evanoff back for more. CD1 stated that from that point on she started going to Greg and Rita Evanoff's house every other day. CD1 got half pound to pound and a half quantity of methamphetamine from Greg Evanoff each trip. CD1 kept 1000 grams of methamphetamine in a safe in her house and occasionally other customers of Greg Evanoff's would come there and pick up methamphetamine from her if Greg and Rita were not around. CD1 identified a provided photograph of Christopher Loree, Jr. CD1 stated she had gone to meet "Little Chris" at **Nate's** house on the corner one time to pick up two ounces of methamphetamine and take it to Greg Evanoff one time. CD1 stated she had delivered a quarter pound of methamphetamine to "Little Chris" one time at the Grand Slam liquor store in downtown

3

Kansas City as well. "Little Chris" was usually at Greg and Rita Evanoff's house and "Little Chris" would get two pounds at a time. CD1 estimated that she had been to the house 100 times and "Little Chris" was there 75 of those times. CD1 identified a provided photograph of **Nathaniel Dennett** as **"Nate."** CD1 stated she started dealing with **Nate Dennett** a couple months prior to her arrest. CD1 stated **Nate Dennett** had been kicked out of his house and that she knew he would need a source for methamphetamine. CD1 stated she met **Nate** for lunch and they talked it over before she started supplying him with quantities ranging from "Eight balls" to two ounces at a time. CD1 stated this went on for that two-month period and estimated she had provided **Nate Dennett** with 10 ounces of methamphetamine, total.

On 03/11/18, RP stated he accompanied Krystal Mann to pick up multiple ounce quantities of methamphetamine from **Nate Dennett** on at least ten occasions when they would get at least two ounces of methamphetamine for $300-$350 per ounce.

On 05/10/2018, **Dennett** admitted he had previously been involved in methamphetamine distribution with Greg Evanoff. Evanoff usually picked up methamphetamine by meeting with a source of supply at a restaurant near the Plaza or Westport areas of Kansas City, Missouri. Evanoff and the unknown source would each bring a woman along to the meeting. The two women would go to the restroom together and would switch bags or transfer the meth from one bag to the other's bag. **Dennett** advised the women would then walk out and **Evanoff** would leave with a woman holding a bag containing the methamphetamine. Rita Evanoff was not used to conduct these transactions, but girls that hung out with Greg Evanoff and motorcycle gangs were used. Evanoff and an unknown courier had a key to a locker at the bus station and every Thursday, 10 pounds of methamphetamine would be placed in the locker for Evanoff to pick up. **Dennett** paid approximately $5,500 per pound and $10,500 per kilo for methamphetamine from Evanoff. Evanoff used his drug proceeds to buy cars, motorcycles, and RVs and to completely remodel the Evanoff's house in Kansas City, Missouri. **Dennett** saw Evanoff holding more than five pounds of methamphetamine on at least twelve occasions.

Co-Defendant Saighman was arrested on this indictment in a hotel by KCMOPD. At that time, he admitted to buying methamphetamine throughout the conspiracy in ounce quantities from "Little Chris" Loree, Greg Evanoff, Oliver and **Defendant Nathaniel Joshua Dennett**.

Defendant agrees the United States' evidence of his total drug responsibility is more than 5 kilograms of methamphetamine for which the defendant is responsible for distributing or possessing with the intent to distribute. The defendant further acknowledges the substances with which defendant was involved were in fact methamphetamine, a Schedule II controlled substance. Finally, defendant acknowledges that at least some acts committed in furtherance of this distribution conspiracy were committed within the Western District of Missouri, during the dates alleged in the indictment.

Defendant additionally acknowledges that during the dates charged in the indictment, and at least partially within the Western District of Missouri, the defendant used or knew at least some of the proceeds obtained from defendant's methamphetamine distribution, and the distribution of others in the conspiracy, were used to pay living expenses, buy assets, and to purchase additional

4

methamphetamine for distribution. Defendant also acknowledges that he and other co-conspirators used cash during the conspiracy to conceal the nature of their illegal activities.

Defendant further acknowledges that all the proceeds from all the drugs sold in the conspiracy, any use of proceeds, any items purchased with proceeds, or utilized in the conspiracy, or obtained through operation of the conspiracy, are subject to forfeiture. Additionally, defendant admits, agrees, and accepts that the facts herein, the drug price calculations contained within the indictment (adopted herein by the parties), and the drug level for which the Court ultimately holds defendant responsible, are the basis for the money judgment to be imposed against defendant pursuant to his admission of the allegations of forfeiture and the money judgment contained within the indictment.

Additional evidence exists that may further implicate the defendant in these conspiracies. The defendant acknowledges that evidence was provided to defendant's attorney via discovery and the defendant has had an opportunity to review it with the attorney prior to signing this plea agreement and further acknowledges that evidence, and any additional evidence obtained prior to sentencing, may affect the ultimately determined drug responsibility level and sentence of the defendant.

The parties have agreed to a drug level *not less than* a drug level 34, and have agreed to a guidelines enhancement of: two (2) levels because of defendant's guilty plea to the money laundering conspiracy. However, it is understood by the parties that the pre-sentence investigation or the Court at sentencing *could* assess a higher drug level of responsibility, and other enhancements, for the defendant based on the evidence in the case to date or that becomes known later. In the event a higher drug level, or other enhancements, are determined by the pre-sentence investigation or the Court at sentencing, the parties are free to express their respective positions about that higher drug level, or other enhancements, at sentencing. However, the defendant acknowledges that he agrees that the United States will only be required to produce law enforcement witness to support the PSR, if that is necessary.

Finally, defendant acknowledges the pre-sentence investigation and the Court at sentencing, in calculating defendant's drug responsibility and applicable sentence range, may use *either* methamphetamine mixture and substance *or* methamphetamine actual.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the

5

indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which defendant is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon pleading guilty to **Count One** of the indictment charging the defendant with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, that is, conspiracy to distribute 500 grams or more of methamphetamine, the minimum penalty the Court may impose is ten (10) years imprisonment, while maximum penalty the Court may impose is not more than life imprisonment and not more than a $10,000,000.00 fine. In addition, that the Court shall impose not less than five (5) years of supervised release and that, this offense is a Class A felony.

The defendant understands that upon pleading guilty to **Count Two** of the indictment charging the defendant with a violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii) and (h) that is, conspiracy to commit money laundering, the maximum penalty the Court may impose is not more than twenty (20) years' imprisonment and not more than a $500,000.00 fine. In addition, that the Court shall impose not more than three (3) years of supervised release and that this offense is a Class C felony.

Additionally, the defendant understands that the criminal forfeiture allegations admission, will allow the Court to enter a money judgment against the defendant in an amount not to exceed $1,750,000. The final amount will be determined from the weight of the defendant's controlled substance responsibility ultimately determined by the Court at sentencing and the controlled substance value calculations contained within the indictment, i.e. $500.00 per ounce of methamphetamine.

The defendant understands that for each count of conviction the Court shall impose a $100

6

mandatory special assessment, which must be paid in full *prior* to sentencing in this case. Failure to *timely* pay said assessment could result in the Government seeking a continuance of the sentencing until it is paid OR, in the alternative, the Government can consider the failure to timely pay it as a violation of this plea agreement and seek to have this agreement voided.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range;

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court shall impose a term of supervised release of not less than five (5) years;

   d. if the defendant violates a condition of supervised release, the Court may revoke that supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release;

   e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range and the Court may impose sentences concurrently or consecutively;

   f. any sentence of imprisonment imposed by the Court will not allow for parole;

   g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

   h. the defendant may not withdraw this guilty plea solely because of the nature or length of the sentence imposed by the Court;

   i. the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the

7

defendant has an interest, and that defendant will not contest any such forfeiture proceedings;

      j. the defendant agrees to forfeit all interests defendant owns or over which defendant exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: *a money judgment in an amount to be based upon defendant's drug responsibility ultimately determined by the Court at sentencing and the drug value calculations contained within the indictment, i.e. $500.00 per ounce of methamphetamine, but not to exceed $1,750,000.* With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

      k. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before sentencing.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any criminal offenses related to the charges defendant has pled to herein for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that the United States' agreement to forego prosecution of additional criminal offenses with which the defendant might be charged are based solely on the promises made by the defendant in this agreement and the limitations set out herein. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other applicable criminal violations. The defendant expressly waives any right to challenge the initiation of the dismissed or additional charges against defendant if defendant breaches this agreement. The defendant expressly waives any right to assert a statute

of limitations defense if the dismissed or additional charges are initiated against defendant following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following breach of this plea agreement, defendant will not be allowed to withdraw this guilty plea.

The defendant further understands that nothing in this plea agreement prevents any prosecution for any act of violence or commission of a sex crime or an attempted violent or sex crime act or a conspiracy to commit any violent or sex crime act. This plea agreement also does not prevent prosecution of any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge. The defendant understands and agrees that if the Government files charges against defendant pursuant to one of these exceptions, defendant will not be allowed to withdraw this guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which defendant has pleaded guilty.

The United States may respond to comments made or positions taken by the defendant, defendant's counsel or anyone on defendant's behalf and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems

9

appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea is formally accepted by the Court, the defendant may only withdraw these pleas of guilty if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts defendant's pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, that will not permit defendant to withdraw these pleas of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

 a. The Sentencing Guidelines do not bind the Court and are advisory in nature; the Court may impose a sentence that is within, above, or below the defendant's ultimately determined Guidelines range; the Court may impose any multiple sentences to be served concurrently or consecutively;

 b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1, which provides for *not less than* a base offense level 34, but the parties reserve the right to address at sentencing the pre-sentence or Court determined drug level;

 c. The parties agree the defendant is subject to a two-level enhancement under the guidelines for the money laundering conviction. While the parties recognize there might be other specific *aggravating or mitigating* U.S.S.G.

10

applications applicable to this defendant, the parties elect to address at the sentencing hearing any found by the pre-sentence report or Court and agree to be bound by the Court's determination following the sentencing hearing;

d. The defendant appears to have admitted his guilt and accepted responsibility for his actions, and by timely notifying authorities of the intention to enter a plea of guilty has thereby permitted the Government to avoid preparing for trial and permitted the Government and the Court to allocate their resources efficiently. Therefore, the defendant appears entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines and the Government, at the time of sentencing, will make a motion with the Court to that effect unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and any pretrial release orders; or (2) attempts to withdraw this guilty plea; or (3) violates the law; or (4) otherwise engages in conduct inconsistent with an acceptance of responsibility;

e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw this plea of guilty;

g. The United States agrees to request a sentence within the United States Sentencing Guidelines range established at the sentencing hearing, and the defendant agrees to request a reasonable sentence, including a departure or a variance, based on any good faith sentencing arguments the defendant cares to make that are not otherwise in conflict with agreements herein, or the law. The sentencing argument agreements by the parties are not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including a sentence outside the applicable Guidelines range or a consecutive sentence;

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence

11

imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and,

    i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 or other places within this plea agreement, and any admissions made during the defendant's plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant, or anyone on behalf of the defendant, at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the indictment;

    c. oppose any arguments and requests for relief the defendant, or anyone on defendant's behalf, might advance on an authorized appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against the defendant;

    e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

    f. the right to remain silent at trial, in which case that silence may not be used against defendant.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court

may ask questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, those answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15. Waiver of Appellate and Post-Conviction Rights**

    a. The defendant acknowledges, understands and agrees that by his *unconditional* plea of guilty pursuant to this plea agreement he waives the right to appeal or collaterally attack a finding of guilt *or* denial of a motion to withdraw his guilty pleas following the acceptance of his pleas of guilty pursuant to this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" is a sentence imposed in excess of the statutory maximum. It is *not* a misapplication or miscalculation of the Sentencing Guidelines, an abuse of discretion, the imposition of an unreasonable sentence, or the imposition of a sentence different from that recommended by either party. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal the sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. Financial Obligations.** By entering into this plea agreement, the defendant states an understanding of and agrees to the following financial obligations:

    a. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine or costs.

    b. The defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or

14

other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution or fine or costs order in full.

      c. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

      d. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets, restitution, fines, or costs.

      e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

      f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of **$200.00** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of fulfillment of this obligation at the time of sentencing.

      g. The defendant certifies that no transfer of assets or property has been made for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that no such transfers will be made in the future.

      h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the

15

defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives any and all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant Will Surrender to Custody at the Plea.** The defendant understands that the crime to which he is pleading is an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Accordingly, pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after he pleads guilty to the offense. Regardless of his current custody situation, the defendant hereby agrees not to contest his detention immediately after the guilty plea, to surrender to the custody of the United States Marshals at that time, and to not attempt release from custody pending sentencing or transfer to the Bureau of Prisons following sentencing.

**20. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States

will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

The defendant also understands and agrees that in the event this plea agreement is violated, all statements made by the defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any rights under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorney or any other party to induce him to enter this plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

17

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 9/10/20

Timothy A. Garrison
United States Attorney

Bruce Rhoades
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and any statutory minimums. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 9/10/20

NATHANIEL JOSHUA DENNETT
Defendant

I am the attorney for defendant NATHANIEL JOSHUA DENNETT. I have fully explained his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines and any statutory minimum sentences applicable in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge and belief, the decision by NATHANIEL JOSHUA DENNETT to enter into this plea agreement is an informed and voluntary one.

Dated: 9/10/20

F.A. "Al" White, Jr.
Attorney for Defendant